

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JGM:MLY
F.#2010R01153

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

July 6, 2012

<u>By Hand and ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>          Re:  <u>United States v. Rodney Watts</u>
>               <u>Criminal Docket No. 10-627 (S-2)(KAM)</u>

Dear Judge Matsumoto:

      The government writes to advise the defendant Rodney Watts and the Court of certain evidence it intends to introduce at the defendant's trial.  This information was disclosed to the defendants long ago (on May 20, 2011, when the government disclosed the 18 U.S.C. § 3500 materials for Martha Xenakis and Mark Jozefowski) and concerns evidence of prior acts of bank fraud committed by Defendants Courtney Dupree and Rodney Watts. The government submitted a similar letter on November 27, 2011 (Docket No. 448) and the Court decided at the final pre-trial conference that the evidence fell under Rule 404(b) of the Federal Rules of Evidence and that the government's notice was untimely as to defendant Dupree's trial beginning December 5, 2012. (Tr., Dec. 1, 2012 at 40).  However, the Court expressly stated that "[b]ecause Mr. Watts is not before the court for trial the court's ruling regarding this notice by the government applies only to the use of this evidence at the trial of Mr. Dupree and Mr. Foley." (Tr., Dec. 1, 2012 at 34).  Accordingly, the government submits this letter once again, before the Court has even scheduled a trial date for defendant Watts.

I.    <u>The Conspiracy Charges in the Superseding Indictment</u>

      Counts One and Two of the Superseding Indictment cover the period from January 2007 to July 2010, and charge the defendants with bank fraud and conspiracy to commit bank fraud against Amalgamated Bank and C3 Capital, LLC ("C3 Capital"). (Docket 295, Superseding Indictment, ¶¶ 18-21).  The government's theory with respect to the conspiracy count, as

well as the underlying substantive offense, is that the defendants conspired with Frank Patello, Emilio Serrano and Irma Nusfaumer to obtain and maintain a loan from Amalgamated Bank and to obtain a $5 million mezzanine loan from C3 Capital. The Amalgamated loan closed in August 2008, and the defendants' courted C3 Capital as a potential lender during 2008 and 2009. Prior to August 2008, the defendants' company, GDC Acquisitions, LLC ("GDC"), borrowed money, pursuant to a line-of-credit agreement, from PNC Bank.

II. The Anticipated Evidence

At trial, the government intends to call at least two witnesses, Martha Xenakis and Mark Jozefowski, both former employees of Hudson Bay Environments, who are expected to testify that Dupree and Watts engaged in "pre-billing," or artificial inflation of GDC's accounts receivable, during GDC's relationship with PNC Bank.

Xenakis is expected to testify that during November or December 2007 she reviewed Hudson Bay's billing backlog, where she expected to find about $6,000,000 worth of billing, but instead discovered that the backlog contained approximately $2,000,000. In other words, Xenakis is expected to testify that her review of the backlog revealed that a large percentage of Hudson Bay's future business was missing. She is expected to testify that Watts was responsible for billing that entire backlog and that the backlog showed that the missing bills had not been sent to customers, but had been billed only in GDC's accounting system, Hedberg.

After discovering that a substantial amount of Hudson Bay's business was missing from the billing backlog, Xenakis is expected to testify that she approached Watts, and asked him what had happened to the missing business. Watts replied that Xenakis need not worry about the matter, because Watts knew what he was doing. After hearing Watts's explanation, Xenakis advised Watts that she planned to take the matter to Dupree. Watts invited her to do so. Xenakis will indicate that she explained the situation to Dupree, who instructed her to undo what Watts had done (i.e., move all of the unbilled Hudson Bay business back from Hudson Bay's accounts receivable to the billing backlog). Thereafter, Xenakis reversed the invoices out of the accounts receivable and placed them back on Hudson Bay's backlog.

Xenakis is expected to testify that the following business day Watts summoned her to his office, where he told her that she had to redo what she had reversed. This directive upset Xenakis, so she told Watts that she was going to discuss the matter again with Dupree. Xenakis then spoke to Dupree about Watts's order, and Dupree told her that he had spoken to Watts and understood and agreed with what Watts was doing with Hudson Bay's billing backlog. Accordingly, Dupree instructed Xenakis to follow Watts's order to return the billing backlog entries to the accounts receivable. Xenakis complied with Dupree's instruction.

Jozefowski is expected to will testify that since 1997, when he first joined Hudson Bay, the Hedberg accounting system showed quotes from the sales department, when the quotes became orders, when the orders became sales, and other collection-related information. He will testify that in December of 2007 the use of the Hedberg system changed dramatically. Over the course of one weekend, Jozefowski will recall that the entire $3,000,000 Hudson Bay billing backlog was essentially eliminated, and all of the backlog business was converted into sales for accounting purposes (*i.e.*, placed on Hudson Bay's accounts receivable). He will testify that this conversion made little sense to him because it typically took approximately 6 to 8 weeks to convert an order into a sale, and even longer when dealing with School Construction Authority orders.

Faced with what he perceived to be a serious accounting problem, Jozefowski asked Xenakis to raise the issue with Dupree. Thereafter, Xenakis advised Jozefowski that she had spoken to Dupree, who told her to follow Watts's instructions to convert the billing backlog into sales on the accounting system. After hearing from Xenakis, Jozefowski spoke to Dupree about the $3,000,000 pre-billing issue. He is expected to testify that he told Dupree that he feared that pre-billing would cause project management complications because if every order was converted into a sale there could be problems accessing information about the status of the individual transactions in the Hedberg accounting system. Jozefowski is expected to testify that ultimately Dupree informed him that GDC had decided to account for sales at the time of order, not at the time of delivery. Jozefowski is also is expected to testify that this was not the first time that he had witnessed Dupree and Watts engaging in pre-billing.

III. Legal Analysis

The government respectfully submits that the uncharged acts of pre-billing (i.e., artificial inflation of accounts receivable) committed by Dupree and Watts are admissible as background evidence of the conspiracy and of the criminal nature of their relationship. This evidence is alternatively admissible pursuant to Rule 404(b) as evidence of Dupree's motive, intent, knowledge and common scheme and plan.

The Second Circuit has distinguished between evidence of other crimes that are inextricably intertwined with the charged offense and evidence of other crimes that are wholly separate violations. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (allowing, under Rule 404(b), evidence that defendant added fictional items to inventory in order to rebut defendant's contention that he acted in good faith when he caused false borrowing base certificates to be submitted to a bank); United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997); United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (citing United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983); United States v. Bagaric, 706 F.2d 42, 64 (2d Cir. 1983)). Evidence of uncharged criminal activity is not considered "other crimes" evidence under Rule 404(b) "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." Carboni, 204 F.3d at 44 (2d Cir. 2000) (quotation omitted). "An act that is alleged to have been done in furtherance of the alleged conspiracy ... is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992); see generally 22 C. Wright & K. Graham, Federal Practice and Procedure § 5239, at 450 (1978).

Numerous cases in this Circuit permit the introduction of uncharged conduct to provide background information and to enable the jury to understand the complete story of the crimes charged. See, e.g., United States v. Diaz, 176 F.3d 52, 80 (2d Cir. 1999) (within trial court's discretion to admit evidence of uncharged acts to show how "conspiracies evolved, and how illegal relationships and mutual trust developed between co-conspirators"); United States v. Skowronski, 968 F.2d 242, 246 (2d Cir. 1992), *superseded by statute on other grounds* ("The trial court may admit evidence that does not directly establish

an element of the offense charged in order to provide background for the events involved in the case.").

In this case, evidence that Dupree and Watts committed similar acts of pre-billing during GDC's relationship with PNC Bank is the type of evidence that will demonstrate for the jury the evolution of the bank fraud conspiracy and the development of the relationship of trust between the Dupree and Watts. Undoubtedly, such evidence will illustrate for the jury why it was that Dupree and Watts felt comfortable conspiring with each other and others to defraud Amalgamated Bank and C3 Capital. In addition, such evidence will provide the jury with an explanation for Dupree's willingness to engage in fraudulent acts with Watts to obtain and maintain GDC's loans with Amalgamated Bank. In the absence of such evidence, the government submits that the jury would be left to speculate on these matters. Accordingly, evidence of the uncharged acts of pre-billing committed by Dupree and Watts in their relationship with PNC Bank should be admitted at the defendants' trial.

Even if the uncharged activity constitutes "other crimes" evidence under Rule 404(b) (it does not), it should still be admitted. Federal Rule of Evidence 404(b) states that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person ... [i]t may, however, be admissible for other purposes, such as proof of ... motive, opportunity, intent, preparation, plan, knowledge [or] identity...." Fed. R. Evid. 404(b). The Second Circuit has long interpreted Rule 404(b) as an inclusive rule allowing the admission of relevant "other acts" evidence if that evidence is offered to prove something other than criminal propensity and if it passes the balancing test required by Federal Rule of Evidence 403. <u>United States v. Levy</u>, 731 F.2d 997, 1002 (2d Cir. 1984) ("[w]e have adopted the inclusionary or positive approach to the Rule; as long as the evidence is not offered to prove propensity, it is admissible"); <u>United States v. Stevens</u>, 83 F.3d 60, 68 (2d Cir. 1996) ("this Circuit takes an inclusive approach to prior bad act testimony: such testimony can be admitted for any purpose except to show criminal propensity"); <u>United States v. Germosen</u>, 139 F.3d 120, 127 (2d Cir. 1998) ("it can be admitted 'for any purpose except to show criminal propensity,' ... unless the trial judge concludes that its probative value is substantially outweighed by its potential for unfair prejudice") (quoting <u>Stevens</u>, 83 F.3d at 68).

In applying these principles, courts have recognized that evidence of a defendant's prior conduct may be admitted for

a variety of purposes permitted by Rule 404(b), such as to establish a defendant's knowledge or intent, explain the background of the conspiracy, or complete the story of the offenses charged. In United States v. Pipola, the Second Circuit set forth a few examples of appropriate 404(b) evidence:

> One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background evidence in a conspiracy case. Such proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust.

83 F.3d 556, 566 (2d Cir. 1996); see also United States v. Pitre, 960 F.2d 1112, 1119-20 (2d Cir. 1992) (prior offenses admissible under Rules 404(b) and 403 to explain relationship among co-conspirators and establish the defendant's knowledge and intent).

The evidence of uncharged misconduct should be admitted in this case because it is relevant, because it is not offered to establish Dupree's criminal propensity, and because its probative value is not substantially outweighed by its potential for unfair prejudice. As noted above, evidence of the uncharged acts of pre-billing is necessary to explain how the conspiracy and the criminal relationship between Dupree and Watts evolved over time. Beyond that, evidence that Dupree and Watts participated in a bank fraud against PNC Bank, GDC's prior lender, during the time period immediately prior to borrowing approximately $20 million from Amalgamated Bank, is certainly evidence relevant to the defendant's motive, intent, knowledge and common scheme and plan. Fed. R. Evid. 404(b). Indeed, evidence that Dupree and Watts defrauded their previous lender by artificially inflating GDC's accounts receivable is compelling proof of their intent to do the same to Amalgamated Bank, their knowledge that such practices were prohibited under borrowing agreements and their common scheme and plan to continue to obtain and maintain financing for the GDC businesses through fraud.

In addition to satisfying the requirements of Fed. R. Evid. 404(b), this evidence is admissible because its probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence" under Federal Rule of Evidence 403. Fed. R. Evid. 403 (emphasis added). The evidence has substantial probative value, as noted above, because it directly implicates Dupree and Watts in the charged crimes. Furthermore, such evidence would not tend to unfairly prejudice the defendants in the eyes of the jury. Testimony that Dupree and Watts engaged in additional acts of pre-billing against PNC Bank is in no way unfair given the substantial evidence that they took part in the bank fraud offenses charged in the superseding indictment, and given the fact that the amount of money borrowed from Amalgamated Bank exceeded the amount borrowed from PNC Bank. The charged fraud far exceeds the uncharged fraud.

In addition, the presentation of evidence of prior pre-billing will serve to clarify rather than confuse issues at trial, as they illustrate the defendants' intent and knowledge concerning the charged crimes. Nor will the evidence cause undue delay as the testimony of government's witnesses will focus primarily on the charged crimes. Therefore, the admission of evidence of the uncharged offenses comports with the requirements of Rule 403 and should be permitted.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York

By:     /s/_____
             Michael L. Yaeger
             David C. Woll
             Assistant U.S. Attorneys
             (718) 254-7000

cc: Marion Bachrach, Esq. and Richard Willstatter, Esq.
    (by ECF)