# Green & Willstatter
Attorneys at Law
200 Mamaroneck Avenue
Suite 605
White Plains, New York 10601

Theodore S. Green
Richard D. Willstatter

(914) 948-5656
Fax (914) 948-8730

e-mail: willstatter@msn.com

April 12, 2013

Honorable Kiyo A. Matsumoto
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>United States v. Rodney Watts</u>
10 CR 627 (KAM)

Dear Judge Matsumoto:

We write to oppose the government's Motion in Limine filed by ECF #689 seeking to preclude the defense from compelling the attendance of Special Agent Gavin P. Shea at trial to give evidence on the defendant's case-in chief.

Because Agent Shea is employed by the FBI, we needed to and did serve the Acting Assistant Attorney General of the DOJ's Criminal Division, Mythili Raman, with an application for permission to obtain the agent's trial testimony pursuant to 28 C.F.R. §§ 16.21-16.26. We overnighted our April 3, 2013 application to Ms. Raman and to the United States Attorney for this District. We emailed a copy to AUSA Yaeger on April 3, 2013.[1] Before filing the application, we spoke with the prosecutor who advised we would need to file the application and that the decision would be made by his superiors within DOJ.

We have received no notice of final action pursuant to 28 C.F.R § 16.25. Instead, the government agrees to make Agent Shea available but seeks to limit the scope of his testimony. We take this as an agreement that the DOJ has no objection to the agent testifying at trial. The defendant maintains his Sixth Amendment right to compulsory process provides him with the right to call Agent Shea as a witness at trial.

In our letter to the DOJ, we summarized the evidence we seek to adduce at trial from Agent Shea. This extraordinary procedure is required by the regulations yet we maintain that the regulations' requirement that the defendant must disclose, in advance, a summary of the witness's testimony violates due process. *United States v. Bahamonde*, 445 F.3d 1225, 1229 (9th Cir. 2006).

---

[1] Inexplicably, AUSA Yaeger writes in his letter that the government received our application on April 5, 2013.

In *Bahamonde*, the Ninth Circuit, relying on *Wardius v. Oregon*, 412 U.S. 470 (1973), held that similar regulations promulgated by the Department of Homeland Security regulations "violate[] due process by failing to provide reciprocal discovery." *Id*. at 1229. The court concluded that it was unfair to require the defendant "to state with specificity the testimony he expected from [the agent]" while "the government was not required at any time to produce the evidence it expected to offer in rebuttal, either from [the agent] or anyone else." *Id*. In any event, our summary stated that, among other things:

> Gavin P. Shea would be expected to give evidence that he prepared the sworn application for the search warrant for the premises at GDC Acquisitions, LLC, that he obtained the search warrant, that he executed the warrant with the assistance of other federal agents he supervised, that he and others decided not to search the office of an officer of GDC Acquisitions, LLC, Veronica Finn, although her office was known or believed to contain materials that could have been seized pursuant to the search warrant, that Agent Shea was aware that Ms. Finn was married to a former special agent of the FBI who was known by Agent Shea and other agents to be present at GDC Acquisitions, LLC when the search warrant was executed. Agent Shea would be expected to give evidence concerning the plans made by him as to the offices that would be searched at GDC Acquisitions, LLC and which offices would not be searched. Agents Shea would be expected to identify a schematic map the government has produced pursuant to Fed. R. Crim. P. 16 which was used during the search and from which the name "Finn" has been scratched out. He would be expected to testify that Finn's name was scratched off the map because he and/or other law enforcement officials decided to refrain from searching Finn's office. Veronica Finn will be called as a witness for the government.

The government posits that the testimony we seek to elicit from Agent Shea "runs afoul of the Court's decision of March 22, 2013." Govt. Ltr. at 1. The government is wrong. The Court's decision on the parties' Motions in Limine [ECF#683] did not "specifically preclude[] the defendant from examining Ms. Finn about whether her name was crossed off the floor plan before the search, and the fact that her office was not searched[.]" Govt. Ltr. at 2. The quoted portion of the Court's decision says, in relevant part:

> The court finds that the FBI's markings on the GDC map do not sufficiently support Mr. Watts' claim that Finn received preferential treatment from the government to allow Mr. Watts to cross-examine her about the government's decision not to charge her with a crime.

Govt. Ltr. at 3 quoting Slip. Op. at 67. This portion of the Court's decision was directed at whether there is a sufficient basis to confront Finn about the government's decision not to charge her. It did not in any way preclude us from proving that Finn's office was omitted from the search. The government's suggestion that we are attempting to "evade the Court's order" [Govt. Ltr. at 3] is

baseless inasmuch as the Court never precluded us from proving either that Finn's name was crossed off the FBI map of the GDC Acquisitions, LLC office or that her office was not searched.

The government also argues that the FBI's decision to refrain from searching Finn's office is "irrelevant to the case." Govt. Ltr. at 3. Again, the government is incorrect.

First, the government's cooperating witness, Emilio Serrano, told the Agent Shea that Veronica Finn knew about accounting fraud since at least August 2009. 3500-ES-1. He claimed that Finn "knows all about the financial fraud." 3500-ES-15. Serrano told Agent Shea that Finn told accounting personnel at GDC that the FBI had arrested others for conduct like that she believed was taking place at GDC and provided two newspaper articles to corroborate her claim. 3500-ES-7. Serrano told Shea that some of GDC's accounting records were located in a "back cage" and that Finn had the keys to the "back cage." 3500-ES-17, 3500-ES-55. Serrano also told Shea that financial, accounting and contractual related documents could be found in the "[s]even offices of the executives . . . , a room for storage of accounting records . . . , [and] the cage area" among other areas within the GDC offices. 3500-ES-36. The seven offices to which Serrano referred are contained on a map he drew for Agent Shea and those were the offices for Foley, Josefowski, Finn, Dupree, McCarthy, Patello, and Watts. 3500-ES-36, 3500-ES-55.

Second, Finn herself admitted that she participated in GDC's executive manager's meetings with Dupree, Rodney Watts, Foley and Mark Jozefowski. 3500-VF-2. Government cooperating witness Irma Nusfaumer told Agent Shea that she repeatedly explained her to Finn her participation in fraud at least twice a month until, in early 2010, Finn told Nusfaumer that "she didn't want to hear about the accounting irregularities anymore." 3500-IN-3. According to Shea's memorandum, Nusfaumer told Finn that Serrano "was destroying documents." 3500-IN-11.

Armed with this and other information, the defense can prove that Agent Shea had ample probable cause to believe that Finn was aware that criminal fraud was being committed and attempted to consciously avoid learning details of the ongoing fraud by at least Serrano and Nusfaumer. Significantly, although Finn was head of GDC's Human Resources ("HR") and formerly president of Unalite,[2] her office was one of seven offices which Shea was told contained "financial, accounting and contractual related documents" and also held the keys to a secure location ("the back cage") in which accounting records were located. Accordingly, the defense is entitled to prove the agent knew all this but decided not to search Finn's office. Even if Finn's office contained HR files, the defense is entitled to prove that FBI agents do not depend on the word of subjects of an investigation in determining which rooms to search. Notably, the search warrant for the GDC office, a copy of which is attached as Exhibit A hereof, says nothing about HR one way or the other, but rather authorized agents to search the entire "PREMISES KNOWN AND DESCRIBED AS 47-07 32ND PLACE, LONG ISLAND CITY."

---

[2] Frank Patello testified that Finn was president of Unalite. Tr. 2694. On October 15, 2009, Messrs. Watts and Foley were appointed "co-chairs" of Unalite, effectively replacing Finn. *See* Dupree Exhibit 165, Tr. 1876-69.

Among the items the agents were looking for were:

- documents or other materials relating to loans or other extensions of credit ("GDC") and its subsidiaries and all bank records, including, but not limited to, account statements and documents related to transactions in bank accounts

- documents relating to assets, liabilities, income, expenses, sales and accounts receivable of GDC or the Subsidiaries, including, but not limited to, accounting records, general ledgers, work papers, journals relating to the receipt or disbursement - or anticipated receipt or disbursement - of money or property, financial statements, trial balances, records detailing the relative age of various accounts receivable, invoices, and federal and state tax records

- documents relating to any mail box located at a commercial mail receiving agency, including, but not limited to, customer applications and correspondence

- documents relating to communications or contacts between the conspirators and any of their principals, employees, or agents, or the Creditors, including, but not limited to, letters, phone messages, e-mail, text messages, "chat," or instant messages

- documents relating to the conspirators', or any of their principals', employees', or agents' calendar, contact, or personal planner data or files

Agent Shea had no reason to believe that Veronica Finn's office did *not* contain any of these documents even if her office may have also contained HR files. On the contrary, based on information he obtained from Serrano, he had reason to believe it did contain accounting information and related documents. Ms. Finn was certainly an employee, as well as an officer of GDC[3], so her office likely contained letters, phone messages, emails and other communications covered by the warrant. Shea and the team he directed decided not to search Finn's office despite knowing her office was likely to contain materials covered by the search warrant. The government assertion that there is "no basis" for this proposition [Govt. Ltr. at 3] is flatly wrong.

The agents' bias in the conduct of the investigation is entirely relevant and the defendant is entitled to present his defense. Mr. Watts is entitled to attack "the reliability of the investigation" and to discredit "the police methods employed in assembling the case." *Kyles v. Whitley*, 514 U.S. 419,

---

[3] Nusfaumer testified that Finn was an officer of GDC. Tr. 1101.

4

446 (1995).[4] The Sixth Amendment affords a defendant a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony. *Corby v. Artus*, 699 F.3d 159, 165 (2d Cir. 2012). Because Agent Shea was the case agent who led the investigation, the government cannot prevent the defense from confronting him by failing to call him as a witness on their case-in-chief.

Our focus on the agents' bias is not –as the government once again suggests– some attempt to claim "prosecutorial misconduct." Govt. Ltr. at 3. We have not and do not suggest there was "selective prosecution." And, in compliance with the Court's order, we will not argue that Finn was not charged because her husband was an FBI agent. Govt. Ltr. at 4, Slip. Op. 56. The Court's order, however, does permit inquiry into Finn's bias. "Mr. Watts is permitted to ask Finn if she ever feared also being charged with conspiracy to commit bank fraud and, if so, the basis for her fear. He may also ask whether her testimony has been affected by the government's decision not to charge her." Slip. Op. 67. And we may ask "whether Finn has any bias or motive that may affect her testimony, including whether her husband's status influenced her actions or her testimony." Slip. Op. 58.

Moreover, the Court's order does permit the defense to inquire about former Agent Finn's "relationship with the original investigating agent on the case [SA Gavin P. Shea], and [former Agent Finn's] presence at the FBI's search of GDC's offices." Slip. Op. 56. The order specifically permits the defense to ask Finn these questions; there is no prohibition, and should be no prohibition, in asking Agent Shea these same questions given his status as the original investigating agent. Further, we are explicitly permitted to ask witnesses whether they were aware that Mr. Finn was present at the search of GDC's offices, and if so, whether his presence affected such witnesses' testimony. Agent Shea is the best witness to answer these questions because it was he who applied for the warrant and supervised the search.

Regarding the government's Rule 403 argument, inquiry into the bona fides of the government's investigation is not some frolic and detour from the issues in the case. The jury is entitled to know whom the agents relied upon and whom they protected.

---

[4] *Watson v. Greene*, 640 F.3d 501, 512 (2d Cir. 2011) is not to the contrary. In that case, the Court noted that *"Kyles* provides no guidance about what evidence must be admitted at trial . . . to ensure a meaningful opportunity to cross-examine adverse witnesses" because *Kyles* addressed the prosecution's obligation to disclose *Brady* material. *Id*. at 512, n.11. Judge Lynch, writing for the Court, found that Watson was properly allowed to inquire into the thoroughness of the investigation and even suggested the excluded evidence did have some probative value, *Id.* at 511-12, but could not grant the habeas writ because Watson could not show that there was *no* reasonable basis for the state court's decision. *See Harrington v. Richter*, 131 S. Ct. 770, 784, 178 L. Ed. 2d 624 (2011). Although *Kyles* was a *Brady* case, the reason prosecutors must disclose favorable information is so it can be used, *e.g.*, by attacking the thoroughness of the investigation.

5

      The Court should deny the government's motion in limine and should order Shea to be produced at trial on the defendant's case. *See United States v. Fuentes-Correa*, 2013 U.S. Dist. LEXIS 21172 *21 (D.P.R Feb. 13, 2013)("once a defendant follows the *Touhy* procedures, a court may compel attendance or production even if the Government refuses it.")

      Very truly yours,

      RICHARD D. WILLSTATTER

cc:    Michael L. Yaeger, Esq.
       Assistant US Attorney